**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0520-24

IN THE MATTER OF THE
VINCENT W. URBANK and IDA
M. GRAF URBANK REVOCABLE
LIVING TRUST DATED 07/18/1991.

_____

Argued May 6, 2026 – Decided May 22, 2026

Before Judges Gilson and Perez Friscia.

On appeal from the Superior Court of New Jersey, Chancery Division, Ocean County, Docket No. 186576.

Vincent A. Urbank, appellant, argued the cause on appellant's behalf.

Joel A. Davies argued the cause for respondent Trustee of Living Trust 1 (Taff, Davies & Kalwinsky, attorneys; Joel A. Davies, of counsel and on the brief).

PER CURIAM

Appellant Vincent A. Urbank, self-represented, appeals from the October 8, 2024 Probate Part order denying reconsideration of the June 28, 2024 order, which approved Joel Davies, Esq.'s accountings as a successor trustee for the Vincent W. Urbank and Ida M. Graf Revocable Living Trust (RVT) and awarded

$9,039.77 in commissions.[1]   Following our review of the record, parties' arguments, and applicable law, we affirm.

I.

This matter returns to us for a third time.  The first appeal resulted in a remand for the probate court to require the court-appointed RVT trustees and administrators to "fully account for estate and [RVT] assets formerly in their hands."  In re Vincent W. Urbank and Ida M. Graf Revocable Living Tr. (In re Urbank I), No. A-2022-19 (App. Div. July 7, 2022) (slip op. at 3).  Specifically, we remanded for the court "to ensure that each of the three successive trustees . . . appointed in this case either file[d] an accounting, produce[d] a previously filed accounting either approved by the court or the beneficiaries[,] or otherwise explain[ed] on the record why it was impossible to comply with the order(s) that they account."  Id. at 15.  Thereafter, on the second appeal, we affirmed the second court's approval of the second successor trustee, Jerome Landers, Esq.'s, accounting for the RVT and bond payment award of $2,805.  In

_____

[1]  Similar to the prior appeal, we recognize Urbank has filed this appeal before the court concluded its review of Davies' accountings pursuant to our remand instructions.  We note that "[g]enerally, an order is considered final if it disposes of all issues as to all parties."  Silviera-Francisco v. Bd. of Educ. of Elizabeth, 224 N.J. 126, 136 (2016).

re Vincent W. Urbank and Ida M. Graf Revocable Living Tr. (In re Urbank II), No. A-1331-23 (App. Div. Feb. 19, 2025) (slip op. at 1-18).

We limit our recitation to the facts relevant to the issues raised in this appeal. Urbank and Elizabeth Fox were the original trustees of the RVT and were succeeded by Peter Van Dyke, Esq. Van Dyke became the first successor trustee after the contingent beneficiaries, Urbank's children, filed a lawsuit seeking distributions from the RVT. In October 2014, Urbank and his children entered into "a comprehensive seventeen-page agreement" (settlement) resolving their existing claims. In re Urbank I, slip op. at 3. The first court accepted the settlement. At the time of the settlement, the assets held in trust were about $1,640,000. Ibid. The settlement provided that a property in Philadelphia and three properties in Toms River were to be transferred to a new partnership and Urbank would manage the properties and collect the rents. Davies had not yet been appointed trustee and did not participate in the settlement.

Thereafter, in July 2016, the first court appointed Landers as the second successor trustee, requiring a bond of $762,000. Id. at 5. After Landers moved to be discharged as trustee, based on communication issues with Urbank, the first court granted Landers' request and appointed Davies as the third successor

3

trustee.  In re Urbank II, slip op. at 15.  The first court ordered Davies to post a $675,000 bond.  Additionally, Urbank was ordered to cooperate with Davies, provide accountings, and transfer documentation regarding the RVT.  In re Urbank I, slip op. at 7.

In 2019, Urbank wrote to Davies, "complain[ing]" Davies had failed to file accountings and no other accountings were received from any "'trustee since the settlement agreement dated October 27, 2014.'"  Ibid.  Davies responded, explaining he had "not done so because no accounting was filed by . . . Landers" and "there was no 'starting point' for [his] term."  Id. at 8.  Davies thereafter filed two accountings "for the periods of October 17, 2016, through October 16, 2017, and October 17, 2017, through October 26, 2018."  Ibid.  In 2019, Davies filed a verified complaint for the second court to approve the accountings and advised "there have been no previously submitted or approved accountings to date."  Ibid.

After the second court accepted Davies' accountings, Urbank appealed. We reversed and remanded, stating the second court shall "ensure that . . . the three successive [appointed] trustees" either file accountings or explain "why it was impossible to comply with the order(s) that they account."  Id. at 15.

A-0520-24

On August 24, 2022, a third court complied with our remand instructions and issued an order to show cause requiring each court-appointed trustee to show cause why they should not be required to complete accountings and "turn over any records, information[,] and trust assets to" the current trustee, Davies. Thereafter, Van Dyke submitted an initial accounting for his trustee service period, covering April 14, 2014 through July 25, 2016. On June 12, 2023, Van Dyke filed a second amended final accounting, which the third court accepted. Thereafter, Landers submitted an amended accounting on August 18, 2023 for his trustee service period from July 25, 2016 through October 17, 2016.

After Urbank filed exceptions to Landers' accounting, the third court held a hearing. It "issued an order accompanied by an oral statement of reasons approving Landers' interim accounting, denying Landers' request for counsel fees, and awarding $2,805 for the bond payment and associated costs." In re Urbank II, slip op. at 8. On appeal, we affirmed the third court's order. Id. at 17.

In 2023, Davies filed accountings for October 17, 2016 through October 16, 2017 and October 17, 2017 through October 16, 2018. The accountings were filed after the third court had approved Van Dyke's and Landers' accountings, complying with our remand instructions. On December 18, 2023, Urbank wrote

to Davies stating, he had "not received any supporting documents that support [the] accounting[s]."

On January 19, 2024, Urbank filed initial exceptions to Davies' accountings, which Davies opposed. Urbank had never provided the previous successor trustees with an accounting or the documents he obtained while acting as a co-trustee. In February 2024, Davies forwarded Urbank "[i]nsurance bills" and other documents.

In February and March 2024, the third court held case management conferences and addressed discovery. The third court's February 2024 interim order provided for the exchange of discovery and that interested parties were to be given notice of a March 5, 2024 case management conference. In February and April 2024, Davies provided Urbank responsive documents. On May 14, 2024, the third court entered an order accompanied by discovery "instructions on the record."

On May 28, 2024, Urbank filed amended exceptions to Davies' accountings, asserting thirty objections. Urbank's exceptions alleged Davies' accountings were untimely and failed to: ensure the trust was operated as set forth in the October 27, 2014 settlement agreement; demonstrate an increased bond was obtained; include payments for homeowner's insurance for the

A-0520-24

properties; include information secured from prior successor trustees' accountings; "ensure all inventory debts . . . are properly managed"; explain a "closed out . . . Lakeland [b]ank account" and transferred funds; explain the transfer of "[o]ppenheimer funds"; include "withdrawals" for bills; demonstrate payment for real estate taxes in "2016[] for any properties"; show the payment of real estate taxes in 2017; demonstrate why an amended tax return was permitted to be "filed by Mohel, Elliott, Bauer & Gass on April 11, 2017"; explain multiple questionable tax statements; provide for the payment of the utility bills for a property in Philadelphia and three properties in Toms River; and include the correct properties assessed values; and establish Davies' entitlement to commissions.

On June 27, 2024, the third court held a one-day hearing and addressed each of Urbank's exceptions. At the outset, the third court noted that "the deputy surrogate [wa]s . . . present" at the hearing and had reviewed Davies' accountings, including the "valuation of the real estate," and found "no derelictions." The third court explained the procedural history of the matter and that Davies could not file his accountings until Van Dyke's and Landers' accountings were each approved. It noted that Davies had over "six more years" of accountings to file. Referencing the matter's long history, the third court

7

expressed that the litigation had been a "difficult . . . contentious road." Further, the third court noted Urbank did not seek leave "to file an answer and . . . counterclaim" to Davies' verified complaint. Finally, the third court noted that Urbank sought Davies' removal as trustee in a separate matter, which was before a fourth court.

In addressing Urbank's first and second exceptions, and other related statements regarding the settlement and properties held in the trust, the third court inquired whether Urbank had complied with the settlement terms. It specifically asked Urbank whether he had "accomplished" providing "a record of the operation of all real property rentals and . . . a comprehensive report on all rental activity with a trustee on an annual basis." Urbank responded that he was "still waiting for the trust to start." While he acknowledged collecting rents for the properties, he had not "report[ed] those [rents] to the trustee[s]." The third court noted that in the four and a half years it had presided over the matter, Urbank had never filed a motion regarding the properties or sought Davies' compliance with the settlement. The third court also recognized Urbank's failure to provide any accountings during his time as trustee.

Davies contended he was unaware of the settlement when he was appointed and was only provided the agreement years later. Pursuant to Rule

8

4:87-8, the third court determined Urbank's first and second exceptions lacked merit because he failed to demonstrate that any accountings modifications were necessary.

As to Urbank's third exception, pertaining to Davies' failure to timely file accountings, the third court again recounted the procedural history and found Urbank failed to assert a necessary "modification" to the accountings. It explained the matter was remanded for the successor trustees to provide accountings before Davies completed his accounting requirements. Urbank then argued under the fourth, fifth, sixth, and seventh exceptions that Davies failed to demonstrate and obtain the required bond. The third court found the exceptions were unsupported because Davies sufficiently substantiated proof the bond was posted, the "premium [was] paid," the disbursement would be reflected in a later accounting when his firm is reimbursed, and the initiating order appointing Davies only required a $675,000 bond.

Regarding the eighth exception, Urbank questioned why the accounting demonstrated no homeowner's insurance payments for the properties, and Davies responded that he had learned there were no homeowner's insurance payments due according to the settlement. The third court determined Urbank did not demonstrate cause to modify the accounting. The third court also found

Urbank's ninth exception, to disallow commissions based on negligent actions, lacked specificity and support.

As to the tenth, eleventh, seventeenth, eighteenth, and nineteenth exceptions regarding Davies' failure to provide certain bills, invoices, and liens, the third court found the allegations lacked merit because Urbank failed to show an error. The court again noted Urbank failed to seek further discovery pursuant to "signed orders," which "allow[ed]" him "to go to . . . Davies' office to look at whatever" documents he wished to review. Davies represented he possessed "the bills" and had paid them. Urbank conceded he did not go to Davies' office. Davies also represented that he paid all taxes in the quarters they were due and clarified he was not the trustee for the tax quarters that Urbank challenged.

Regarding "nominal" late fees for outstanding bills, the third court found they were not unreasonable, and Davies reasonably needed time to "get up to speed as to what was due." The third court further noted the Surrogate's Office had reviewed and approved the accountings, accepting the electronic withdrawal payments for bills. The third court accepted Davies' representation and found that Urbank had not met his burden of showing support for a modification to the accountings.

A-0520-24

In addressing Urbank's twelfth, thirteenth, fourteenth, fifteenth, and sixteenth exceptions regarding various bank accounts, the third court determined Davies was not required to send separate notices regarding bank account changes. Further, Urbank had failed to "present" any evidence of a bank account transfer or accounting error. It also noted Urbank showed no loss or detriment to the trust.

The third court next addressed Urbank's income tax objections under exceptions twenty through twenty-seven, which related to the tax filings by the accountant. Davies argued he did not prepare the taxes but hired an accountant. Urbank produced no accounting expert and showed no "indication that the numbers [we]re wrong." The third court found Urbank failed to demonstrate support for the exception.

Regarding exception twenty-eight, the third court determined Davies could not provide the accountings earlier because the previous trustees' accountings were not approved. The third court credited Davies' representation that he had not paid taxes for a property because he was unaware of the obligation and later paid the taxes owed, which would be reflected in future accountings. The third court specifically stated it was satisfied that "the tax bills [were not] listed as paid on th[ese] accounting[s] because [Davies] was[ not]

A-0520-24

aware . . . at the time [of the bill] and . . . now they will be addressed in future accountings." Urbank acknowledged during the hearing he never provided an accounting or related documents. The third court highlighted the relevance of Urbank's prior acknowledgments during court proceedings that he allegedly could not complete an accounting because he "gave all the boxes to" an accountant and never received them "back."

Under exception twenty-nine, Urbank argued Davies failed to provide him with notice of the properties' newly assessed values. The third court noted Urbank could "go on the county clerk website and look it up." The third court found Urbank provided no support that he was entitled to a notice of the assessment and determined Urbank was attempting to "impos[e] a duty in law that does not exist."

Finally, Urbank's thirtieth exception included a "general objection to commissions." Urbank reiterated his general argument that Davies' accountings were untimely, and that he "neglect[ed]" to "rename" and "put homeowner's insurance" on the properties. Davies responded that any untimeliness on behalf of the successor trustees came from the "domino effect" of Urbank's own negligence. The third court denied Urbank's final exceptions and again referred

12

to a prior court's September 9, 2013 order, which noted, "Urbank shall file with the [first] court within [thirty] days two accountings for the trust."

After the hearing, the third court ordered that: Davies' accounting of the RVT "for the period of October 17, 2016 to October 17, 2017 and the period of October 17, 2017 to October 16, 2018 . . . [we]re allowed as reported"; "[a]n income commission of $728.03 [wa]s awarded to . . . Davies for the period of October 17, 2016 to October 17, 2017" and "[a]n income commission of $689.74 [wa]s awarded . . . for the period of October 17, 2017 to October 16, 2018"; Davies was awarded a "corpus commission of $3,935.88 for the period of October 17, 2016 to October 16, 2017" and "$3,686.12" "for the period of October 17, 2017 to October 16, 2018" "pursuant to N.J.S.A. 3B:18-25"; and Davies was directed "to file a formal accounting" for the RVT "for the period of October 17, 2018 to December 31, 2023 within 45 days of the date of th[e third court's] order." The third court awarded Davies commissions totaling $9,039.77.

On October 8, 2024, Urbank moved for reconsideration, which the third court denied. Urbank argued that Davies should not receive "commissions and compensation for operating a trust . . . [in]correctly." Urbank maintained Davies' accountings were untimely and Davies did not fulfill his trustee

responsibilities. In denying the motion, the third court explained that Urbank failed to demonstrate an error in the accountings. The third court reasoned that Urbank's failure to provide his trustee accountings, which he was required to file pursuant to multiple orders, inhibited the filing of the successor trustees' accountings. Further, "Davies could[ not] file his accountings until the other [trustees'] accountings were approved." The third court noted the cascading effect that Urbank's failure to provide the accountings and records had caused on the successor trustees' accountings. It highlighted that "Van Dyke did[ not] have all of the information[] . . . because of the litigation" and Urbank's "failure to account," which resulted in Van Dyke's accounting becoming "the starting point" for the other trustees' accountings.

On appeal, Urbank contends the third court erred by failing to fully address the delivery of trust property by all former trustees, finding Davies had performed his duty to administer the accounting after failing to furnish all receipts; and failing to order remedies for breach of trust.

## II.

The decision to approve the final accounting is reviewed for an abuse of discretion. In re Acct. of Ex'rs of Koretzky, 8 N.J. 506, 535 (1951). Further, the court's allowance of statutory "commissions is a matter left to the court's

14

discretion . . . , which will be set aside only where there has been an abuse" of discretion.  Bank of N.J. v. Abbott, 207 N.J. Super. 29, 38 (App. Div. 1986) (quoting In re Est. of Moore, 50 N.J. 131, 138 (1967)); see In re Est. of Summerlyn, 237 N.J. Super. 269, 272-73 (App. Div. 2000); see also N.J.S.A. 3B:18-23 to -33.  "A court abuses its discretion 'when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'"  Parke Bank v. Voorhees Diner Corp., 480 N.J. Super. 254, 262 (App. Div. 2024) (quoting Mims v. City of Gloucester, 479 N.J. Super. 1, 5 (App. Div. 2024)).

"N.J.S.A. 3B:31-67(a) requires '[a] trustee [to] keep the qualified beneficiaries of the trust reasonably informed about the administration of the trust and of the material facts necessary for them to protect their interests.'"  In re Gloria T. Mann Revocable Tr., 468 N.J. Super. 160, 179 (App. Div. 2021) (alterations in original) (quoting N.J.S.A. 3B:31-67(a)).  "An action to settle an account on an estate trust is a formalistic proceeding, unique to probate."  Higgins v. Thurber, 205 N.J. 227, 229 (2011); see also R. 4:87-1 to -9.

Pursuant to Rule 4:87-1 an action may be commenced "to settle the accounts of executors, administrators, [and] testamentary trustees."  See also N.J.S.A. 3B:17-10.  Rule 4:87-3 enumerates the information an accounting is

required to contain. An interested person may file written exceptions to an accounting, pursuant to Rule 4:87-8, which provides:

> In all actions for the settlement of accounts, other than plenary actions, any interested person may, at least [five] days before the return of the order to show cause or within such time as the court allows, serve the accountant written exceptions, signed by that person or his or her attorney, to any item in or omission from the account, including any exceptions to the commissions or attorney's fees requested. The exceptions shall state particularly the item or omission excepted to, the modification sought in the account and the reasons for the modification. An exception may be stricken because of its insufficiency in law.

"The Surrogate as deputy clerk of the court shall audit the accounts of all fiduciaries unless otherwise ordered by the court . . . and shall make a report to the court upon the audit." R. 4:87-6. "The report shall specify the derelictions, if any, and other matters that in the Surrogate's opinion should be brought to the court's attention." R. 4:87-6.

Exceptions to an executor's account are "a vehicle for determining the propriety of the executor's statement of assets and claims for allowance." Perry v. Tuzzio, 288 N.J. Super. 223, 229 (App. Div. 1996). The Supreme Court has described an action to settle an account as a proceeding that "involves a line-by-line review on the exceptions to an accounting." Higgins, 205 N.J. at 229 (citing R. 4:87-1(a)). The court may strike exceptions that "lack[] sufficient

particularity and [a]re insufficient as a matter of law." In re Will of Maxwell, 306 N.J. Super. 563, 584 (App. Div. 1997). A judgment accepting an accounting "'after due notice [is] res adjudicata' as to all parties and 'as to all exceptions which could or might have been taken to the account.'" Id. at 577 (alteration in original) (quoting N.J.S.A. 3B:17-8). "This concept of finality applies to judgments approving intermediate accountings as well as final accountings." Id. at 577-78.

Our Supreme Court has also explained that commissions should be paid when a trustee "h[e]ld, manage[d,] and invest[ed] . . . assets and pa[id] over the income thereon as well as the principal to the specified beneficiary." In re Armour's Will, 33 N.J. 517, 524 (1960). "In administering a trust, the trustee may incur only costs that are appropriate and reasonable in relation to the trust property, the purposes of the trust, and the skills of the trustee." N.J.S.A. 3B:31-58. A trustee bears similar duties to a trust's remaindermen, if any, and must not use the trust property to benefit only "the life beneficiaries." In re Maxwell, 306 N.J. Super. at 585-86 (collecting authorities).

III.

We first address Davies' opposition, in which he objects to our consideration of Urbank's appeal due to multiple deficiencies with Urbank's

merits brief and appendix. Davies correctly asserts that multiple documents in Urbank's appendix are illegible and relevant documents referenced were not provided. Notably, we previously cautioned Urbank in our opinion on his first appeal that our review of the matter was inhibited because "the record" he submitted was "incomplete" and we were "not . . . provided all the relevant facts." In re Urbank I, slip op. at 2, 12. Rule 2:6-1(a)(1)(I) requires that an appellant's appendix must contain the parts of the record "essential to the proper consideration of the issues." While we are not "obliged to attempt review of an issue when the relevant portions of the record are not included," we have nevertheless reviewed Urbank's documents and transcripts provided. State v. D.F.W., 468 N.J. Super. 422, 447 (App. Div. 2021) (quoting Cmty. Hosp. Grp., Inc. v. Blume Goldfaden Berkowitz Donnelly Fried & Forte, P.C., 381 N.J. Super. 119, 127 (App. Div. 2005)). Failure to file legible and complete documents in a future appeal may result in dismissal of the appeal. See R. 3:23-7.

Urbank argues that the third court erred in accepting Davies' accountings and awarding him commissions despite his failure to follow the settlement's requirement to deliver trust property and complete certain trustee "duties." The third court noted Davies was not the trustee when the settlement was entered

and credited his representation that he only learned about the settlement after acting as the trustee for some time. Further, the third court found Urbank had failed to complete an accounting and forward the relevant documents from his term as a co-trustee, Urbank never moved for compliance with the settlement, and Landers had not completed an accounting. After a review of the record, we discern no error in the third court's determination that Urbank's exceptions failed to demonstrate any valid reasons warranting a modification of Davies' accountings.

We next turn to address Urbank's contention that the third court erroneously approved the accounting without requiring "receipts," "bills," and "statements." We again note Urbank failed to provide the third court's case management orders and the transcript from a case management hearing where he was provided specific discovery directions. The third court was unpersuaded by Urbank's exceptions based on a failure to receive bill documentation because Urbank was provided with requested discovery, afforded the opportunity to go to Davies' office to review the bills—but chose not to go—and never moved for any supplemental discovery. Specifically, the third court highlighted it had "signed orders allowing [Urbank] to . . . exchange [discovery]" and "to make

A-0520-24

demands."  Urbank never "c[a]me back to the [c]ourt and s[aid] that [he] w[as] dissatisfied with th[e] responses."

The third court also found Urbank failed to state with particularity "the item or omission [excepted] to" in the accountings.  The record supports the third court's findings that Urbank had ample opportunity to obtain relevant documentation and he failed to assert an error in Davies' accountings.  For these reasons, we are convinced the third court appropriately exercised its discretion in determining Urbank failed to demonstrate a modification of the accountings was warranted.

Finally, we note Urbank argues Davies' accountings were in error because they were completed despite "missing documentation from two prior trustees," and all the "litigation stem[s] from the misconduct of both past and current trustees."  In arguing Davies was not entitled to a commission, Urbank also asserts that Davies "inappropriately charged the trust—rather than Landers."  The actions and accountings of Van Dyke and Landers are not appropriately before us on appeal.  Therefore, we decline to address Urbank's arguments surrounding the prior trustees.  Further, "[i]t is not our function . . . to allow a collateral review of the first decision of this Division but only to adjudge whether it has been complied with."  Deverman v. Stevens Builders, Inc., 35

A-0520-24

N.J. Super. 300, 302 (App. Div. 1955); see also Tomaino v. Burman, 364 N.J. Super. 224, 232 (App. Div. 2003).

To the extent that we have not addressed Urbank's remaining contentions, it is because they lack sufficient merit to be discussed in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Hanley

Clerk of the Appellate Division

A-0520-24